UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Lance Phillip Wickner,

        Plaintiff,

   v.

Mike Green, Steve Ayers, Kent
Grandlienard and Mark Thielen,

        Defendant.

_____

Civil No. 07-3869 (DWF/JJK)

**REPORT AND
RECOMMENDATION**

_____

Lance Phillip Wickner, *Pro se*

Margaret Jacot, Esq., on behalf of Defendant

_____

JEFFREY J. KEYES, United States Magistrate Judge

     The above-entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion for Summary Judgment (Doc. No. 18). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendants' motion be granted.

I.    **INTRODUCTION**

Plaintiff is an inmate in the Minnesota State Correctional Facility at Oak Park Heights.  On July 1, 1999, he pled guilty to a charge of second degree criminal sexual conduct for an offense committed in May of 1999.  According to the criminal complaint, Plaintiff rubbed the vagina and buttocks of a ten year old girl while she was sleeping. (Docket No. 24, Ex. E.)  Plaintiff had a previous juvenile conviction for fourth degree criminal sexual conduct from 1995.  *Id.*  Since entering the custody of the Minnesota Department of Corrections custody, plaintiff has had an extensive history of sex-related disciplinary offenses, most involving exposing himself to female prison guards.  (Docket No. 28 at Exs. A-C.)  In this action, plaintiff claims that his constitutional rights to "freedom of expression and speech" was violated because the correctional facility has denied him access to "teen girl" magazines, such as *Sweet 16*, *Teen Vogue* and *Cosmo Girl*.  Complaint at p. 5 (Docket No. 1).  Plaintiff seeks compensatory damages, punitive damages, injunctive and declaratory relief in this *pro se* action under 42 U.S.C. § 1983. The defendants have moved for a dismissal of the Complaint and for summary judgment in their favor.

II.     **BACKGROUND FACTS**

In the summer of 2007, plaintiff was incarcerated at the Minnesota Correctional Facility at Oak Park Heights ("MCF-OPH").  Affidavit of Mike Green ("Green Aff.") ¶ 7.  (Docket No. 23.)  In June of 2007, plaintiff was sent a magazine entitled *Sweet Sixteen*.  *Id.* ¶ 8.  The magazine featured young women and was geared towards preadolescent girls.  *Id.*  Mike Green, supervisor of the mailroom at MCF-OPH,

reviewed the magazine and determined that the magazine should not be released to plaintiff as it would not be conducive to the rehabilitation of a sex offender, particularly one whose victims were young girls.  *Id.*  On June 22, 2007, plaintiff was issued a Notice of Non-Delivery of Mail/Package indicating that the magazine was being held for review by the Mental Health Unit.  *Id.*  Ex. B.

   According to DOC policy, offender access to mail may be limited "when there is a reasonable belief that a limitation will protect the public safety, the rehabilitation of the offender, or facility order and security."  *Id.*  Ex. A, DOC Division Directive 302.020. Magazines and subscribed periodicals are subject to a centralized review by department staff.  *Id.*  The department publication review authority reviews all periodicals and magazines annually to determine which periodicals will be allowable at DOC facilities.  *Id.*   When a facility receives a magazine or subscribed periodical that has not been reviewed by the department publication review authority, the facility mailroom staff review the publication and determine whether it is allowed in accordance with policy.  *Id.*  DOC policy provides that offenders may request a review of decisions denying mail delivery by sending a written request form to the mailroom supervisor.  *Id.* The mailroom supervisor responds in writing and provides a decision and rationale.  *Id.* Offenders may then request a subsequent review by the correspondence review board. *Id.*  The correspondence review board reviews actions regarding offender mail and consists of one or more staff who does not have direct involvement in or direct supervision of normal handling of the mail.  *Id.*  Once the correspondence review board reviews a decision to deny mail, it must send the offender a written decision and

rationale.  *Id.*  The decision of the authority is a final decision.  *Id.*

On June 22, 2007, plaintiff sent a complaint to Green disputing the decision to

deny him access to the magazine.  *Id.*  ¶ 11, Ex. D. Green responded on June 26, 2007

and indicated that access to the magazine had been denied due to rehabilitative

concerns and that the denial was discussed with mental health unit staff.  *Id.*  Plaintiff

appealed the decision to the correspondence review board.  Affidavit of Mark Thielen

("Thielen Aff.") ¶ 6.  (Docket No. 25.)

At that time, the correspondence review board for MCF-OPH was composed of

Associate Warden Mark Thielen, Associate Warden Kent Grandlienard, and Corrections

Security Captain Steven Ayers. *Id.* ¶ 2; Affidavit of Kent Grandlienard ("Grandlienard

Aff.") ¶ 2 (Docket No. 22); Affidavit of Steven Ayers ("Ayers Aff.") ¶ 2 (Docket No. 21).

All of the members of the correspondence review board had extensive backgrounds in

correctional work.  *Id.*  Mark Thielen had worked for the DOC for approximately thirty

years in various positions, including three years as the supervisor of the DOC Sex

Offender Program.  Thielen Aff. ¶¶ 1, 7.  Kent Grandlienard had worked for the DOC for

approximately 26 years in various positions.  Captain Steve Ayers had worked for the

DOC for over 22 years and had been a member of the correspondence review board

since 1996.  Ayers Aff. ¶¶ 1-2.

These members of the correspondence review board considered plaintiff's

appeal of the decision to deny him access to the *Sweet Sixteen* magazine.  *Id.*  ¶ 5;

Thielen Aff. ¶ 6;  Grandlienard Aff. ¶ 5.  They were aware of plaintiff's history of criminal

sexual offenses against a minor.  Ayers Aff. ¶ 6; Grandlienard Aff. ¶ 6.  The

correspondence review board decided to uphold the mailroom's decision to deny

plaintiff access to the magazine and sent plaintiff a memorandum communicating their

decision.  Thielen Aff. ¶ 6, Ex. B; Ayers Aff. ¶ 5; Grandlienard Aff., ¶ 5.  The board

concluded, based on the members' years of experience working for the DOC, that the

magazine would not be conducive to plaintiff's rehabilitation as a sex offender because

reading and possessing materials such as *Sweet Sixteen* would provide stimulus for

plaintiff's deviant sexual addictions.  Ayers Aff. ¶ 6; Thielen Aff. ¶ 7; Grandlienard Aff. ¶

6.  Recidivism research, according to the board, indicates that images of minors, even

when not sexually graphic, can stimulate inappropriate sexual urges and can serve to

reinforce cognitive distortions in sexual offenders. Affidavit of Steven Allen ("Allen Aff.")

¶ 4.  The board was also concerned that possession of the magazine would threaten

plaintiff's safety and create a potential for assault.  Grandlienard Aff. ¶ 6.  In the

experience of the board, offenders who have committed sexual crimes against minors

have been assaulted if other offenders discover the nature of those crimes.  *Id.*  If an

offender is found with material geared toward minors, it brings undue scrutiny to the

offender and increases the risk that the offender will be assaulted by other inmates.  *Id.*

In addition, the board was concerned that the magazine would find its way to other

offenders. *Id.* ¶ 7.  Once a magazine enters a correctional facility, it can move freely

among offenders.  *Id.*

Throughout the remainder of the summer of 2007, plaintiff was sent additional

issues of *Sweet Sixteen* as well as issues of *Teen Vogue* and *Cosmo Girl*, all

magazines featuring young girls and targeted to young girls.  Green Aff., ¶ 14, 16-17, 19.  He was denied access to all of these magazines by mailroom staff, appealed to the correspondence review board, and the correspondence review board affirmed the denials of each issue for the same reasons that the original *Sweet Sixteen* magazine was denied.  Green Aff. ¶¶ 14-20; Thielen Aff. ¶ 6.  Steven Allen, a licensed clinical social worker and sex offender treatment therapist at the DOC, reviewed plaintiff's history and his requests and supported the decision to continue to restrict plaintiff's access to teen magazines because plaintiff's access to such materials would be reasonably linked to a risk of ongoing sexual misconduct both within the prison and the community.  Allen Aff. ¶ 5.

Plaintiff asserts that a therapist, Thomas Switala, who was working with plaintiff in the prison told plaintiff that he should have access to the teen girl magazines in issue.  However, Switala's notes indicate that Switala and his supervisor in the mental health unit agreed that Switala should not make the decision because he was not a sex offender therapist.  (Note of Thomas F. Switala, Ex. 3 to plaintiff's Reply, Docket 30 at p. 12 of 27.)

II.   **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COMPLAINT SHOULD BE GRANTED.**

(A)   <u>Standard of Review</u>.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In response to a

motion for summary judgment, "the non-moving party" must "go beyond the pleadings

and by her own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for

trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c)

& (e)).  "If the adverse party does not so respond, summary judgment, if appropriate,

shall be entered against the adverse party."  Fed. R. Civ. P. 56(e).  The evidence and all

reasonable inferences are viewed in the light most favorable to the non-moving party.

*Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 834-35 (8th Cir. 2002).  *Pro se*

pleadings are more liberally construed than those drafted by an attorney.  *See Smith v.*

*St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994).

       A dispute about material facts is genuine only "if the evidence is sufficient to

allow a reasonable jury to return a verdict for the non-moving party."  *Landon v. N.W.*

*Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995).  If the non-moving party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial," then Rule 56(c) requires

the entry of summary judgment against such party.  *Celotex*, 477 U.S. at 322-23.

       (B)     42 U.S.C. § 1983 Claims.

       "[P]risons are not beyond the reach of the Constitution" and prisoners are

"accorded those rights not fundamentally inconsistent with imprisonment itself or

incompatible with the objectives of incarceration."  *Hudson v. Palmer*, 468 U.S. 517, 523

(1984).  Although prisoners retain their constitutional rights, limitations may be placed

on the exercise of those rights in light of the needs of the penal system.  Constitutional

claims that would otherwise receive strict scrutiny analysis if raised by a member of the

general population are evaluated under a lesser standard of scrutiny in the context of a

prison setting.  *Murphy v. Missouri Dep't of Corrections*, 372 F.3d 979 (8th Cir. 2004).

"A prison regulation or action is valid . . . even if it restricts a prisoner's constitutional

rights if it is 'reasonably related to legitimate penological interests.'"  *Murphy v. Missouri*

*Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004), cert. denied, 125 S.Ct. 501 (2004)

(quoting *Turner v. Safley*, 482 U.S. 81, 89 (1987)).  In *Turner v. Safley*, the United

States Supreme Court set forth the factors courts should consider in determining the

reasonableness of a restriction:

> (1) whether there is a valid, rational connection between the regulation and the
> interest asserted;
> (2) whether alternative means of exercising the right remain open to the prisoner;
> (3) the effect the requested accommodation will have on guards, other inmates,
> and the allocation of prison resources; and
> (4) whether there is some alternative which will accommodate the prisoner's
> needs with *de minimis* impact on the prison's asserted interests.

*Goff v. Harper*, 235 F.3d 410, 414 (8th Cir. 2000) (citing *Turner*, 482 U.S. at 87).

### 1.   RATIONAL CONNECTION

In determining whether there is a valid rational connection between the prison

regulation at issue and the legitimate governmental interest used to justify the policy,

courts must consider whether the governmental objective underlying the policy is (1)

legitimate, (2) neutral, and (3) whether the policy is "rationally related to that objective."

*Thornburgh*, 490 U.S. 401, 414, 109 S. Ct. 1874 (1989).  A regulation has a valid

rational connection to an asserted goal unless the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. *Turner*, 482 U.S. at 89-90, 107 S. Ct. at 2254. The DOC's judgment with regard to the connection need not be perfect, just rational. *Waterman v. Farmer*, 183 F.3d 208, 215 (3rd Cir. 1999). "We accord great deference to the judgment and expertise of prison officials, particularly with respect to decisions that implicate institutional security." *Murphy*, 372 F.2d at 983.

Prison officials need not prove that the banned material actually caused problems in the past, or that the materials are "likely" to cause problems in the future. *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999). In analyzing this element, the court should only consider whether the defendant's judgment was "rational," that is, whether the defendant might reasonably have thought that policy would advance its interest. *Id.* The court need not agree with prison officials, and need not find that the prison regulation actually advances the prison's legitimate penological interests. *Id.* Thus, a decision to deny access to material is rational if there is a common sense nexus between a legitimate penological interest and the asserted means of forwarding that interest. *Cline v. Fox*, 266 F. Supp. 2d 489, 498 (N.D. W. Va. 2003); *Aiello v. Litscher*, 104 F. Supp. 2d 1068, 1075 (W.D. Wis. 2000).

In this case, the DOC might reasonably have thought that plaintiff's access to teen girl magazines would advance penological interests. The Defendants' decisions were based on many years of experience in the correctional environment in which they learned that magazines like those in question in this case provide stimulus for a sex

offender's deviant sexual addictions and interfere with his rehabilitation.  The

Defendants also based their decision on their experience that, historically, offenders in

possession of materials geared towards children may be identified as persons who have

committed sexual crimes against children and are at a greater risk of assault as a result.

An assault risks not only the safety of the offenders involved, but also the safety of the

prison guards that must break up the fight.  Thus, the connection between the

Defendants' decision and the DOC's goals was rational, was based on years of

experience in the correctional environment, and was not arbitrary.

Courts have determined that prison security, inmate rehabilitation, and a desire

to reduce sexual harassment of officers are legitimate penological interests.  *Dawson v.*

*Scurr*, 986 F.2d 257, 260 (8th Cir. 1993); *Waterman*, 183 F.3d at 215; *Mauro v. Arpaio*,

188 F.3d 1054, 1059 (9th Cir. 1999).  The United States Supreme Court has recognized

that suspect publications, once in prison, may circulate among prisoners noting,

> Once in prison, material of this kind reasonably may be
> expected to circulate among prisoners, with the concomitant
> potential for coordinated disruptive conduct.  Furthermore,
> prisoners may observe particular material in the possession
> of a fellow prisoner, draw inferences about their fellow's
> beliefs, sexual orientation, or gang affiliations from that
> material and cause disorder by acting accordingly.

*Thornburgh*, 490 U.S. at 412-13, 109 S. Ct. at 1874.  In this case, the DOC has

stated that plaintiff was denied access to teen girl magazines because of plaintiff's

criminal sexual conduct with a young girl and his extensive history of sexual misconduct

in prison.  In the reasonable judgment of the DOC, the magazines would interfere with

his rehabilitation as a sex offender, could cause him to fantasize and engage in further

acts of harassing female guards by exposing himself in their presence and masturbating in their presence, as he had often done, and could lead him to be targeted and assaulted by other offenders if the magazines were discovered in his possession.  Thus, the DOC has asserted legitimate penological interests in maintaining prison security, rehabilitating sex offenders, and reducing sexual harassment of prison guards.

A governmental objective is neutral if the regulation or practice in question furthers an important or substantial governmental interest unrelated to the suppression of expression.  *Thornburgh*, 490 U.S. at 415, 109 S. Ct. at 1882.  When prison administrators deny access to publications on the basis of their potential implications for prison security and rehabilitation, the government objectives are unrelated to suppression of expression and are neutral.  *Dawson*, 986 F.2d at 261; *Waterman*, 183 F.3d at 215.  In the present case, the DOC's decision to deny plaintiff  access to teen magazines was based on legitimate concerns about prison security, rehabilitation, and prevention of sexual harassment of the guards.  The decision was not based on a desire to suppress expression.  Thus, the governmental objectives were neutral.

Plaintiff argues that the defendants' proffered reason for denying him access to the magazines was not rationally related to a legitimate penological interest.  He states that allowing him access to teen magazines would not interfere with his rehabilitation or threaten the security of the prison.  In support of this, he argues that his offense was against a ten year old girl, not a teenager.  However, ten year olds are pre-adolescents and can share many of the same characteristics of teenage girls.  Further, teen magazines are often geared towards pre-adolescent girls in addition to teenage girls.

Thus, the distinction does not support plaintiff's argument that allowing him access to teen girl magazines would not interfere with his rehabilitation.  As the Supreme Court made clear in *Thornburgh*, regulations which give broad discretion to prison authorities are appropriate where the regulations concern materials, such as those in this case, coming into a prisoner.  *See*, 490 U.S. at 416, 109 S. Ct. 1874.

2.  **ALTERNATIVE MEANS**

The second *Turner* factor asks whether there are alternative means of exercising the right that remain open to prison inmates.  *Turner*, 482 U.S. at 90, 107 S. Ct. at 2262. The "right" in question must be viewed sensibly and expansively.  *Thornburgh*, 490 U.S. at 417, 109 S. Ct. at 1884.  For example, in *Turner*, the Court upheld a regulation that restricted correspondence between inmates at different state prisons.  In doing so, the Court rejected the argument that inmates should be afforded other means of communicating with inmates at other institutions, finding it sufficient if other means of expression remained available to the inmates.  *See Turner*, 482 U.S. at 92, 107 S. Ct. 2254.

DOC regulations provide that there will be no limit on the length, language, content, or source of mail or publications except when there is a reasonable belief that a limitation will protect the public safety, the rehabilitation of the offender, or facility order and security.  Green Aff., Ex. A, DOC Division Directive 302.020.  Each year, the department publication review authority meets, reviews all of the magazines and

publications that have been received at the facility during the year, and determines

which publications are allowable and which publications implicate public safety,

rehabilitation, or order and security concerns. *Id.* The regulation is designed to err in

favor of allowing offender access to publications unless they fit within the exceptions

listed above. Thus, the policy allows for the receipt of a broad range of publications.

The DOC only restricted the plaintiff's access to "teen girl" magazines. Keeping in mind

the judicial deference owed to corrections officials in this context, there is no

constitutional obligation to provide plaintiff with some alternative means of access to

such magazines.

### 3. **IMPACT ON OTHERS**

Courts should be particularly deferential to the informed discretion of corrections

officials when accommodation of an asserted right will have a significant "ripple effect"

on fellow inmates or on prison staff. *Turner*, 482 U.S. at 90, 107 S. Ct. at 2262. Where

the right in question can be exercised only at the cost of significantly less liberty and

safety for everyone else, guards and other prisoners alike, the courts should defer to the

informed discretion of corrections officials. *Thornburgh*, 490 U.S. at 418, 109 S. Ct. at

1884. The DOC's judgment that providing the teen girl magazines to plaintiff would

have an adverse impact on others, including prison guards, should be afforded this

deference.

### 4. **OTHER ACCOMMODATION**

Finally, plaintiff argues that a less restrictive alternative would be to allow his

therapist, Thomas Switala, to decide whether he should have access to the teen girl

magazines.  However, Switala's notes indicate that he and his supervisor in the mental health unit agreed that he should not make that decision because he is not a sex offender therapist.  (Docket No. 30 at 12 of 27.)  The cost of requiring the DOC to turn over its responsibility to make decisions, such as those at issue here, to a prisoner's therapist is not *de minimis*.  "It is incumbent upon the prisoners to point to an alternative that accommodates their rights at *de minimis* cost to security interests."  *Casey*, 4 F.3d at 1523.

### 5.  DAMAGES

Absent consent or Congressional enactment to the contrary, the Eleventh Amendment bars actions for damages against a state in federal court.  *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107 (1985) (consent exception); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671 (1976) (Congressional enactment exception); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) (both exceptions).  This bar applies with equal force to damages against state officials sued in their official capacities in federal court.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989).  When an action is barred by the Eleventh Amendment, a federal court must dismiss it for lack of subject-matter jurisdiction. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64-65, 73, 116 S. Ct. 1114, 1128 (1996); Fed. R. Civ. P. 12(h)(3).  Thus, even if this entire action were not dismissed because of the failure, as a matter of law, of the 1983 claims, the damage claim alone would fail on this separate ground.

**THEREFORE, IT IS HEREBY RECOMMENDED** that:

1.      Defendant's Motion for Summary Judgment (Docket No. 18) be

**GRANTED**; and

2.      Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.


Dated:  June 30, 2008

_s/ Jeffrey J. Keyes_

Hon. Jeffrey J. Keyes
United States Magistrate Judge


Under D.Minn. LR 72.1(c)2 any party may object to this Report and Recommendation
by filing with the Clerk of Court, and serving all parties by July 15, 2008, a writing which
specifically identifies those portions of this Report to which objections are made and the
basis of those objections.  Failure to comply with this procedure may operate as a
forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party
may respond to the objecting party's brief within ten days after service thereof.  All briefs
filed under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This Report
and Recommendation does not constitute an order or judgment of the District Court,
and it is therefore not appealable directly to the Circuit Court of Appeals.