UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lance Phillip Wickner,                                    Civil No. 07-3869 (DWF/JJK)

          Plaintiff,
                                                          **ORDER ADOPTING REPORT**
v.                                                        **AND RECOMMENDATION**
                                                          **AS MODIFIED**
Mike Green, Steve Ayers, Kent
Grandlienard, and Mark Thielen,
in their individual and official capacities,

          Defendants.

_____

Lance Phillip Wickner, *Pro Se*.

Margaret Jacot, Assistant Attorney General, Minnesota Attorney General's Office, Counsel for Defendants.

_____

      This matter is before the Court upon the objection of Plaintiff Lance Phillip Wickner ("Wickner") (Doc. No. 35) to Magistrate Judge Jeffrey J. Keyes' Report and Recommendation dated June 30, 2008 (Doc. No. 34), recommending that Wickner's complaint against Mike Green, Steve Ayers, Kent Grandlienard, and Mark Thielen ("Defendants"), all officers with the Minnesota Department of Corrections ("DOC"), be dismissed and summary judgment granted in the Defendants' favor.

      The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The factual background for the above-entitled matter is clearly and

precisely set forth in the Report and Recommendation and is incorporated by reference for purposes of Wickner's objection.

This Court agrees with the Report and Recommendation's conclusion that Wickner's constitutional rights were not violated by the Defendants when they denied him access to *Teen Vogue*, *Cosmo Girl* and *Sweet 16*, which are magazines featuring and targeted toward teenage girls. The Court also agrees with the Report and Recommendation's conclusion that Wickner's suit for damages is barred by the Eleventh Amendment. The Court, however, modifies the Report and Recommendation as to three issues as follows.

## I.     Wickner's Constitutional Claims.

Wickner argues that the Report and Recommendation accepts as true the Defendants' version of the facts, rather than considering the facts in favor of Wickner, the non-moving party, as required by the summary judgment standard. *See Enter. Bank v. Magna Bank of Mo.,* 92 F.3d 743, 747 (8th Cir. 1996) (holding that upon consideration of the motion for summary judgment, a court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party). Wickner argues that he presented sufficient evidence in support of his version of the facts to survive summary judgment. Even if the Report and Recommendation gave undue weight to the evidence offered by the Defendants,[1] this Court has conducted a

---

[1]     Wickner takes particular issue with the Report and Recommendation's statement that "ten year olds are pre-adolescents and can share many of the same characteristics of teenage girls. Further, teen magazines are often geared towards pre-adolescent girls in
(Footnote Continued on Next Page)

*de novo* review, viewing the facts in the light most favorable to Wickner, and concludes that Wickner has not met his burden to show that his constitutional rights were violated.

Wickner contends that the denial of these magazines did not serve a valid penological purpose. *See Turner v. Safely*, 107 U.S. 78, 89 (1987) (holding that a regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is "reasonably related to legitimate penological interests"). The Defendants articulated several legitimate penological interests in denying Wickner access to the magazines he seeks. The most compelling reason offered is that it would interfere with Wickner's rehabilitation as a sex offender, considering that he has twice committed sexual assault, once against a 10-year-old girl, and has a history of masturbating and exposing himself to female guards.

Wickner disputes that the magazines were denied to him because of any interference with his rehabilitation and claims that his request to receive the magazines was denied "to restrict expression of teen magazines." (Doc. No. 35 at 1.) Wickner counters the Defendants' evidence by his own affidavit, which contains allegations but no specific facts to support his claim. A party opposing a properly supported motion for summary judgment, however, "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

---

(Footnote Continued From Previous Page)
addition to teenage girls." (Doc. No. 34 at 11.) While this statement is a generalization, and some of the affidavits on which it is based contain fairly sweeping statements about pre-adolescent and teenage girls, a subject on which correctional officers are not experts and which may be outside their personal knowledge, this Court concludes that this evidence is not determinative to the outcome of this case.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).  Wickner has not produced sufficient facts showing that the Defendants' real purpose for denying him access to magazines oriented toward teenage girls was to limit expression.

Further, Wickner argues that the Report and Recommendation does not adequately consider his proposed alternative, that the DOC allow Thomas Switala ("Switala") to evaluate whether Wickner should have the magazines.  Under *Turner*, a court considering a constitutional challenge by an incarcerated person must consider whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." 107 U.S. at 90-91.  Wickner argues that there is no cost to his proposed alternative.  Wickner's argument, however, is based on the *pecuniary* cost to the facility, but that is not the relevant measure of a proposed alternative.  Instead, under Turner, the Court must evaluate the cost to "valid penological interests."  *Id*.

Wickner's proposed alternative would place the decision as to whether he should receive the magazines in the hands of one person working within the DOC, Switala.  According to the record in this case, Switala's title is "Psychology Intern," and he works within the facility's Mental Health Unit.  (Aff. of Lance Wickner ("Wickner Aff.") ¶¶ 20, 24, Ex. 3 at 1.)  Switala initially objected to Wickner's receipt of the magazines because he was concerned that such a magazine "might encode a deviant sexual response cycle."  (*Id*.)  Switala asked Defendant Green not to deliver *Sweet 16* to Wickner.  (*Id*. ¶¶, 20, 24, Ex. 3 at 2.)  Wickner's therapy notes reveal Switala subsequently determined that he "was out of bounds on that decision and although [his] intention was to protect Mr. Wickner, it is/was not appropriate for [him] to make decisions about sex-offenders when

4

[he is] not a sex-offender therapist." (*Id.* ¶¶ 20, 24, Ex. 3 at 5.) Switala then stated: "I still agree that the magazine should not be delivered to Mr. Wickner, but if he wants it I cannot stand in the way of him receiving it." (*Id.*) The record, therefore, demonstrates that Switala decided that, as he is not a sex offender treatment professional, he was not competent to determine whether Wickner should receive the magazines, and even so, Switala did not believe Wickner should be given the magazines.

Wickner's own evidence shows his proposed alternative would require the DOC to abandon an established publication review policy, with due process safeguards, in favor of allowing decisions to be made by an intern who admits that he is not an appropriate decision maker. Wickner's alternative would impose too great a cost on the valid penological interest served by the DOC's policy.

## II.     Eleventh Amendment.

The Report and Recommendation states that an action barred by the Eleventh Amendment must be dismissed for lack of subject-matter jurisdiction, and the Defendants also made this statement in support of their motion to dismiss. (Doc. No. 34 at 14; Doc. No. 19 at 8.) Both Defendants and the Report and Recommendation cite *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 64-65, 73 (1996), for this principle. This case, however, does not clearly articulate that the Eleventh Amendment implicates subject-matter jurisdiction, but discusses the concept of the limitation on federal court jurisdiction under the Eleventh Amendment more generally.

The year after it decided *Seminole Tribe*, the Supreme Court stated in *Idaho v. Coeur d'Alene Tribe of Idaho*, that the Eleventh Amendment "enacts a sovereign

immunity from suit, rather than a nonwaivable limit upon the Federal Judiciary's subject-matter jurisdiction." 521 U.S. 261, 267 (1997). The nature of sovereign immunity under the Eleventh Amendment was also discussed in *Wisconsin Dept. of Corrections v. Schacht*, in which the Supreme Court noted that the bar to jurisdiction found in the Eleventh Amendment was not analogous to diversity jurisdiction, because the presence of a non-diverse party destroys the federal courts original jurisdiction, it may not be waived by the parties, and must be raised by the court on its own. 524 U.S. 381, 388-389 (1998). Sovereign immunity, on the other hand, is a legal defense that may be waived by a state and a federal court need not raise the defect on its own, but may ignore it if it is not raised by the state. *Id*. at 389. Justice Kennedy's concurrence in *Schacht* suggested that sovereign immunity under the Eleventh Amendment is a "hybrid" in that some aspects of the immunity resemble personal jurisdiction requirements, whereas others suggest it is a creature of subject-matter jurisdiction. *Id*. at 394 (Kennedy, J., concurring). Justice Kennedy also suggested that the Supreme Court modify its jurisprudence regarding the Eleventh Amendment to make it more consistent with the Supreme Court's practice regarding personal jurisdiction. *Id.* at 395.

The question of whether sovereign immunity under the Eleventh Amendment reflects the underlying concepts of personal jurisdiction, subject-matter jurisdiction, or some hybrid of the two was not settled by *Seminole Tribe*, and, in fact, has not yet been settled, contrary to the statements in the Report and Recommendation and the Defendants' briefs. This Court need not resolve this thorny issue, however, because it is clear that the Eleventh Amendment applies in this case and the state has not consented to

this Court's jurisdiction. Therefore, the Report and Recommendation's conclusion that Wickner's suit against the Defendants in their official capacities is barred by the Eleventh Amendment is correct.

## III.   Qualified Immunity.

The Defendants moved to dismiss Wickner's suit against them in their individual capacities on the basis that they were shielded from suit by qualified immunity. The Report and Recommendation does not address this issue.

Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" *Avalos v. City of Glenwood,* 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). Therefore, liability does not arise from an official's bad guess in a gray area, but instead flows only from the transgression of a bright line. *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (quoting *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992)).

Qualified immunity is a question of law to be decided by the district court. *Littrell v. Franklin,* 388 F.3d 578, 585 (8th Cir. 2004). On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists. *Goff v.*

*Bise,* 173 F.3d 1068, 1072 (8th Cir. 1999). First, the plaintiff must assert a violation of a constitutional right. *Id.* Second, the alleged right must be clearly established. *Id.* Third, taking the facts in the light most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated the plaintiff's clearly established rights. *Id.* If the Court determines that the facts, viewed in the light most favorable to the injured party, do not establish a violation of a constitutional right, no further inquiry is necessary. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

The threshold inquiry in this Court's analysis of qualified immunity is, therefore, whether Wickner has shown a violation of a constitutional right. As explained above, the Defendants have not violated Wickner's constitutional rights by denying him access to magazines featuring and targeted toward young girls. As a result, Defendants are entitled to qualified immunity and Wickner's claims against them in their individual capacities must fail.

Based upon the *de novo* review of the record and all of the arguments and submissions of the parties and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. Plaintiff Lance Phillip Wickner's objection (Doc. No. 35) to Magistrate Judge Jeffrey J. Keyes' Report and Recommendation dated June 30, 2008, is **DENIED**.

2. Magistrate Judge Jeffrey J. Keyes' Report and Recommendation dated June 30, 2008 (Doc. No. 34), is **ADOPTED AS MODIFIED**.

     3.     The Motion to Dismiss and for Summary Judgment (Doc. No. 18) of Defendants Mike Green, Steve Ayers, Kent Grandlienard, and Mark Thielen is **GRANTED**.

     4.     Plaintiff's Complaint (Doc. No. 1) is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 12, 2008     s/Donovan W. Frank
     DONOVAN W. FRANK
     Judge of United States District Court